IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Lendora Gilchrist, ) | C/A No.: 4:10-3034-JMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Parth's Incorporated d/b/a Comfort Inn, ) | |
| and Alpha Parmar, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Lendora Gilchrist filed this action on November 24, 2010, seeking recovery under federal and state causes of action for alleged race discrimination related to her former employment at the hotel of Parth's Incorporated d/b/a Comfort Inn ("Parth's, Inc.") and its part-owner/manager, Alpha Parmar[1] ("Defendants"). This matter comes before the court on Defendants' motion for summary judgment [Entry #21]. Plaintiff filed a response [Entry #23], and Defendants filed a reply [Entry #24]. After considering the memoranda and the arguments of counsel at a hearing held on September 27, 2011, the undersigned recommends that Defendants' motion for summary judgment be granted.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration.

---

[1] Alpha Parmar is referred to as Alpa Parmar throughout Defendants' briefing and in her affidavit.

I.      Factual Background

In May 2008, Parth's, Inc., purchased the hotel and hired Plaintiff, who had worked as a third-shift front desk agent for the prior owners. Plaintiff was the only African American employee working among five front desk agents. Plaintiff claims she was discriminated against on the basis of her race because she alleged that only her hours were reduced during the relevant time period.[2] It is undisputed that Plaintiff's work hours were reduced for four, eight-hour shifts in March 2009 (a total of 32 hours), as the uncontested payroll register reflects. *See* Entry #24-2 at p.12. Plaintiff testified that her hours were also reduced from 40 to 32 hours for three weeks in February 2009 (Pl.'s Dep. 30:4–10), but she admits she has no documentation to support her claim, and the payroll register reflects she was paid for 40 hours for each of four weeks in February. *See* Entry #24-2 at pp.11–12. In her briefing, Plaintiff claims her complaints about her reduced work hours were not addressed and that Defendants terminated her on April 3, 2009 in retaliation for her complaints of discrimination. At the hearing, Plaintiff changed her argument and argued that Defendants restored her full-time hours because she complained.

Defendants argue that Plaintiff's hours were temporarily reduced to provide training for Linda Smith, a new employee hired to replace part-time night desk agent Cecil Collins, who had resigned in late January 2009. Defendants note that Plaintiff's hours were restored

---

[2] At the hearing, Plaintiff's counsel conceded that other employees' hours were reduced, but argued that Plaintiff's hours were reduced more than the other employees' hours.

to full-time after Smith was fully trained and prior to the events that gave rise to Plaintiff's termination.

Third-shift desk agents were responsible for reconciling the day-end financials, including counting the money, retaining $400 for the beginning of the first shift and placing the remainder of the money in an envelope that was to be slid under Parmar's locked door. Defendants claim that the Cash Reconciliation Summary for the business day of April 2, 2009 showed a third shift ending balance of $623.95, which should have resulted in an envelope of some $223.95 to have been slid under Parmar's door. *See* Cash Reconciliation Summary in Entry #21-4 at p. 2. Parmar claims the night deposit was missing on the morning of April 3, 2009. Plaintiff concedes that "Defendant's proffered reason for terminating her was the fact that on April 2, 2009, Plaintiff failed to put the night deposits in an envelope and slide the deposit under the Defendant's office door."[3] [Pl's Response, Entry #23 at 3].

The parties disagree on subsequent events. Parmar claims that she immediately called Plaintiff to return to the hotel on April 3, 2009, confronted her about the missing money and that Plaintiff promised to repay the money. Parmar claims that she met with Plaintiff again

---

[3] In her briefing, Plaintiff places emphasis on the discrepancies in the amount and timing of funds alleged to be missing. See Response at p.2 ($151.15 alleged missing on April 6, 2009 in police incident report; $123.95 reflected missing in Cash Reconciliation Summary on April 2, 2009; $223.95 alleged missing in Defendants' motion). The undersigned finds that the precise amount alleged to be missing does not create a genuine dispute of material fact, as there is no dispute that some amount of the night deposit was missing from the last night shift that Plaintiff worked on April 2, 2009.

3

on April 4, 2009, confronted her again about the missing money and presented her with an Employee Warning Report which she refused to sign. The Employee Warning Report criticized Plaintiff for, among other things, missing money, persistent rude behavior with coworkers and guests, and Plaintiff's allowing unauthorized persons behind the front desk, and it gave Plaintiff an opportunity to replace the missing money or be terminated. *See* Entry #21-5 at p. 2.

Plaintiff disputes Parmar's account, and she testified that she knew nothing about any missing money until April 6, 2009, when Parmar's nephew, K.D. Maharaulga, whom she refers to as her supervisor/manager, accused her of stealing money and of allowing an unauthorized person behind the front desk. Pl.'s Dep. 46:14–47:10; 50:10–51:20. Plaintiff claims that she first spoke with Parmar about the missing money in her office on April 7, 2009, at which time Parmar presented her with a termination notice. Pl.'s Dep. 61:10–62:16. Although she denies having ever received the Employee Warning Report, Plaintiff testified that Parmar terminated her on Parmar's honest belief that Plaintiff was responsible for missing money. Pl.'s Dep. 66:12–18. In fact, Parmar filed an incident report with the Marion County Police, reporting the missing funds. [Entry #23-1].[4]

---

[4] At the hearing, Plaintiff's counsel argued that K.D. was the individual who actually terminated her, with Parmar ratifying his actions. For support of this argument, Plaintiff cited to her own deposition testimony not contained in the briefing. Defendant responded that Plaintiff ultimately testified in her deposition that Mr. and Mrs. Parmar alone terminated her, also citing to deposition testimony not contained in the briefing. Counsel for each side declined the court's invitation to supplement the record with the entirety of Plaintiff's deposition. Therefore, no genuine dispute of material fact exists as to Parmar having made the termination decision.

4

On October 15, 2009, Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission (SCHAC) that alleged (1) her work hours were reduced in favor of a white employee, and (2) that she was terminated and replaced by a white employee. *See* SCHAC Charge in Entry #21-7 at p.2. SCHAC transferred the investigation to the Equal Employment Opportunity Commission, which after investigation, dismissed the charge and provided Plaintiff a notice of right to sue. Entry #21-8 at p.2. Plaintiff timely filed this action alleging a first cause of action for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and a second cause of action for violation of the South Carolina Human Affairs Act, S.C. Code Ann. § 1-13-20, § 1-13-80(a)(1).

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

    B.    Analysis

        1.    Title VII Claim for Race Discrimination

Plaintiff's race discrimination cause of action alleges two adverse employment actions: 1) reduced work hours; and 2) termination. The court analyzes each separately. Because Plaintiff lacks any direct evidence of race discrimination, she proceeds on the indirect evidence burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Plaintiff has the initial burden to establish a prima facie case by the preponderance of the evidence by showing that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) her position remained open or was filled by similarly qualified person outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir.2004) (en banc). If Plaintiff establishes the prima face case, the burden then shifts to

Defendants "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.*

          a.      Plaintiff's Reduced Work Hours

Defendants concede for the purposes of their motion that Plaintiff can establish her prima facie case as to her claim of reduced work hours, to wit: (1) Plaintiff is African American; (2) her hours were reduced during March 2009; (3) she was performing her job duties at a level that met her employer's legitimate expectations during that time period; and (4) her hours were temporarily given to Smith, who is Caucasian.

Defendants state that there was a legitimate, non-discriminatory reason that Plaintiff's hours were temporarily reduced in March 2009: to train Smith to cover the two night shifts that Plaintiff did not work. Defendants note that Smith's training began during the daytime, and the hours of two daytime Caucasian desk agents, Mary Floyd and Norma Bass, were also reduced. *See* Entry #24-2 at p.7 (reduction in Bass's hours from 40 to 32 beginning 2/11/09) and pp. 15–16 (reduction in Floyd's hours from 40 to 32 for week of 2/18/09, to 24 for week of 2/25/09). Defendants state that once Parmar felt Smith was adequately trained to handle the night shift alone, Parmar reduced Smith's hours and restored Plaintiff's to a full 40-hour week. *See* Entry #24-2 at p. 20 (reduction in Smith's hours from 24 to 16 beginning 4/1/09) and p. 12 (increase in Plaintiff's hours from 32 to 40 beginning 4/1/09). Defendants submit that new employee training is a legitimate, non-discriminatory reason for temporarily reducing an employee's work hours.

The undersigned submits this explanation is sufficient to shift the burden to Plaintiff,

who must show that the legitimate reasons offered by Defendants were not the true reasons, but were a pretext for discrimination. This burden on Plaintiff merges with her ultimate burden of persuading the court that she is the victim of intentional discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Plaintiff fails to offer sufficient evidence of pretext and racial discrimination. She testified that she "can't answer" whether she thinks her hours were reduced on account of her race:

> Q: Do you believe that K.D. only took hours from you to give hours to Linda?
> A: Well, that's what he said.
> Q: Why do you think he did that?
> A: Why do I think it? I don't – why did I think he did it?
> Q: Yes.
> A: I don't know why he did it. Should I answer that? Because I don't know why he did it.
> Q: Okay. Do you have any reason to believe that he did that because he was trying to get Linda fully trained to be the only employee at the hotel at night?
> A: Are you saying that he was thinking about getting rid of me now?
> Q: No.
> A: Okay. Well, I can't answer that. That's another question I can't answer.
> Q: Okay. Do you think he did it because you're black?
> A: I can't answer that. I don't know if it – I don't know why he did it. Should I be saying "yes" or "no" to these questions?
> Q: You should be telling the truth.
> A: Okay. I don't know.

Pl.'s Dep. 35:5–36:2.

At the hearing, Plaintiff's counsel argued that K.D. discriminated against Plaintiff, but conceded that she chose to not take K.D.'s deposition for support of her claims. Because Plaintiff's subjective assertions and unsupported speculation are insufficient to create genuine issue of material fact as to Defendants' allegedly discriminatory conduct, Plaintiff must come

forward with allegations substantiated by accounts of specific dates, times or circumstances to survive summary judgment. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.2003)("neither unsupported speculation, nor evidence that is merely colorable or not significantly probative will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.")(internal citations omitted); *and Gilliam v. South Carolina Dept. Of Juvenile Justice*, 474 F.3d 134 (4th Cir.2007)("Although [the plaintiff] made several general statements of dissimilar treatment, she provided very few specifics. The few specific examples [the plaintiff] did proffer were not supported by any evidence other than her own general statements, which often lacked detail. Such assertions, standing alone, are insufficient to sustain an actionable Title VII claim.")(internal citations omitted).

In sum, nothing in the evidence or arguments presented rebuts Defendants' legitimate reason for temporarily reducing Plaintiff's hours in order to train Smith. Plaintiff has failed to provide any evidence that racial discrimination was the real reason for her reduction in hours instead of the reasons Defendants proffered. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000)(noting it is not enough to disbelieve the defendant—a factfinder must believe plaintiff's explanation of intentional race discrimination). Accordingly, summary judgment for Defendants is appropriate on Plaintiff's first claim of discrimination in reduction of her hours.

b.      Plaintiff's Termination

Plaintiff's claim of racial discrimination in her termination turns on her inability to demonstrate the third factor—that at the time of her termination she was performing at a level that met her employer's legitimate expectations. Plaintiff testified as follows:

> Q:   ... From Ms. Alpha's point of view as the employer, do you think that she thought you were doing a good job?
> A:   Yes.
> Q:   Why do you think she fired you?
> A:   Why do I think she – well, she think – she thought I stole money, and she had thought I allowed somebody in the office. That's why I think it. That was what was said. It had nothing to do with my work, because as far as my work, nothing has changed over fifteen years as far as how to do things.
> Q:   When she fired you, did she give you those two reasons that she thought somebody was behind the desk that shouldn't have been, and she thought that you were responsible for the missing money? Did she give you those two reasons at that time?
> A:   That's what she had written.
> Q:   Okay. Did she give you any other reasons?
> A:   That's – no.

Pl.'s Dep. 66:9–67:1.

The case law reflects a distinction between whether a plaintiff is qualified for a job and whether she is meeting the employer's legitimate job expectations. *See Warch v. Ohio Cas. Ins. Co.,* 435 F.3d 510, 514 (4th Cir. 2006)(plaintiff's argument that "he only needs to show that he is 'qualified' for the job, rather than meeting his employer's legitimate job expectations, is foreclosed by circuit precedent"). As the *Warch* court elaborated, "considering an employer's legitimate expectations comports with the purpose of requiring the establishment of a prima facie case—to screen out those cases whose facts give rise to an inference of nondiscrimination, in other words, to eliminate the most common, nondiscriminatory reasons for the employer's

conduct." *Warch* at 514. The court made a distinction between the hiring of a new employee, where the typical focus is on the candidates' qualifications, and the firing of an employee, where more likely focus is "on other aspects of the employment, such as poor job performance or infractions of company rules." *Id.*

Here, Defendants assert that Plaintiff was terminated because Parmar believed that Plaintiff was responsible for the missing night deposits. Plaintiff herself acknowledges that Parmar believed that she had stolen money and allowed an unauthorized person behind the desk:

> Q: Okay. Do you have any reason to believe that that reason I stated to you [i.e., Parmar's belief that Plaintiff stole money and allowed an unauthorized person behind the desk] was not the real reason she terminated you? Whether you did it or not, whether it's true or not, do you think she thought something different? Do you believe that it was just a disguise for something different or evil?
> A: No.

Pl.'s Dep. 67:2–8. Parmar had a legitimate business expectation that her employees not steal the hotel's money, and her belief that Plaintiff was responsible for the missing night deposit renders unsatisfied the third element of the prima facie case.

Even if the court assumes that the prima facie case is satisfied, Plaintiff cannot overcome her burden under *McDonnell-Douglas*. Defendants have offered a legitimate reason for terminating Plaintiff because of their belief that she stole the night deposit. At the hearing, Plaintiff argued that she did not steal the money and argued that because she was not arrested as a result of the incident report, that her non-arrest supports her claim of innocence. The undersigned disagrees.

"Title VII is not a vehicle for substituting the judgment of a court for that of the

11

employer." *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir. 1995). Courts do not sit as "super personnel departments second guessing an employer's perceptions of an employee's qualifications." *Malghan v. Evans*, 118 Fed.Appx. 731 (4th Cir. 2004), *citing Smith v. University of N. Carolina*, 632 F.2d 316, 346 (4th Cir.1980). In fact, "the law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered, as long as they are nondiscriminatory. *Id.*, *citing Powell v. Syracuse Univ.*, 580 F.2d 1150, 1156-57 (2d Cir.1978). Plaintiff has presented no evidence that Defendants' decision to terminate her was other than because of Parmar's belief that she was responsible for the missing night deposit.

> The court's only concern is
>
> whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.

*DeJarnette v. Corning Inc.*, 133 F.3d 293 (4th Cir. 1998) *citing Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410–411 (7th Cir.1997).

Plaintiff attempts to show that Defendants' nondiscriminatory reasons for her termination are pretextual by relying on her own opinion. However, the Fourth Circuit has repeatedly explained that "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir.1996)(internal citations omitted). Accordingly, Plaintiff's perception of herself is not relevant. To the extent that Plaintiff's proffered hearsay testimony that K.D. falsely

accused her of stealing money has any relevance, it fails to prove as a reasonable probability that Parmar's belief was either false or pretextual for discrimination. *DeJarnette,* 133 F.3d at 299 (employee must present evidence reasonably calling into question the honesty of his employer's belief; employee's mere demonstration that his employer's belief may be incorrect is not sufficient to prove discrimination).

Further, Plaintiff has set forth no evidence indicating her termination was related to her race, and when asked, she specifically denied that her race had anything to do with her termination, let alone that it was the real reason for her termination instead of the reasons Defendants proffered:

> Q: During the meeting on Tuesday, April 7th, 2009 when Mrs. Parmar terminated you and wrote down it was because of an unauthorized person behind the desk and the missing money, did she say anything about the fact that you're African American?
> A: No.
> Q: Do you believe the fact that you're African American had anything to do with her decision to fire you?
> A: No.

Pl.'s Dep. 67:9–17. Plaintiff's admission that the reason for her termination was not related to her race is binding on her. *Lightner v. City of Wilmington*, 545 F.3d 260, 264 (4th Cir. 2008)(admissions during litigation are binding). Further, Plaintiff cannot create a jury issue by identifying discrepancies in her own account of the facts in order to survive summary judgment. *See Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984)("a genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.").

13

There is no evidence from which a reasonable jury could conclude Plaintiff is entitled to a verdict. Therefore, the undersigned submits that Defendants are entitled to summary judgment on Plaintiff's Title VII claim for race discrimination in her termination.

        2.        State Claim for Race Discrimination

Defendants move for summary judgment on Plaintiff's second cause of action for discrimination asserted pursuant to the South Carolina Human Affairs Law ("SCHAL"), S.C. Code § 1-13-20, § 1-13-80(a)(1). Defendants argue that Plaintiff's SCHAL claim is disallowed by state statute. Specifically, S.C. Code Ann. § 1-13-90(d)(8) provides:

> No action may be brought under this Chapter if an action alleging essentially the same facts and seeking relief for the same complainant has been brought in any Federal Court. Any action brought under this Chapter shall be promptly dismissed if an action alleging essentially the same facts and seeking relief for the same complainant is brought in any Federal Court.

*Id.* Plaintiff fails to provided any argument in opposition to Defendants' motion that would support her SCHAL claim for race discrimination.

The undersigned submits that to the extent Plaintiff is asserting a claim of race discrimination under SCHAL, Defendants are entitled to dismissal on the same grounds discussed in the Title VII section above. Plaintiff's claim under SCHAL is evaluated under the same standards as are used for evaluating her federal claims. *Burns v. South Carolina Dept. of Transportation*, No. 05-3271, 2006 WL 3791361, *5 (D.S.C. Dec. 22, 2006); *Tyndall v. National Education Centers*, 31 F.3d 209 (4th Cir.1994); S.C. Code Ann. § 1-13-10 *et al.* The definition of "employer" under SCHAL is almost identical to the definition of "employer" under Title VII. *See* S.C. Code Ann. § 1-13-30(e).

Moreover, the legislature in enacting the South Carolina Human Affairs Law specifically noted that:

> Nothing in this chapter may be construed to create a cause of action against a person not covered by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq., if the cause of action arises from discrimination on the basis of race, color, religion, sex, or national origin.

S.C. Code Ann. § 1-13-100. Because Defendants cannot be held liable for race discrimination under Title VII, they cannot be held liable for race discrimination under SCHAL. *See Orr v. Clyburn*, 290 S.E.2d 804, 806 (S.C.1982), (recognizing that SCHAL follows the substantive structure of Title VII and that cases which interpret the provisions of Title VII which are essentially identical to SCHAL are to be given persuasive if not controlling authority). Therefore, the undersigned submits that Defendants are entitled to summary judgment on Plaintiff's SCHAL claim for race discrimination.

III.    Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' motion for summary judgment [Entry #21] be granted.

IT IS SO RECOMMENDED.

*[signature]*

October 3, 2011                                    Shiva V. Hodges
Florence, South Carolina                           United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

15